PEOPLE ex rel. LINDEMANN v. BINGHAM, Police Com'r.

(Supreme Court, Appellate Division, Second Department. December 30, 1909.)

1. MANDAMUS (§ 76*)—PROCEEDING AS INVOLVING TITLE TO OFFICE.

In mandamus to compel restoration of a police captain to his position, from which it is claimed he was arbitrarily removed without authority and placed on the roll of the pension fund, his title to office is not involved, and mandamus will lie.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 158–160; Dec. Dig. § 76.*]

2. MUNICIPAL CORPORATIONS (§ 185*)—POLICE COMMISSIONER—POWER OF REMOVING AGED OFFICERS.

Greater New York Charter (Laws 1901, p. 154, c. 466) § 355, provides that on their own application members of the police force of the age of 55, after serving 20 years or more, may, and, on the certificate of incapacity by police surgeons, members of any age who have served such time shall, by order of the commissioner, be retired and placed on the pension roll; that members of the age of 55 who have served 25 years, and members who are honorably discharged soldiers or sailors in the late Civil War, and shall have reached the age of 60, or served 20 years, shall be so retired on their own applications, "and the said commissioner may in like manner relieve and dismiss from the service and place on the roll of the police pension fund and grant and award a pension to any member of said force other than an honorably discharged soldier or sailor of the Mexican or late Civil War who shall have reached the age of sixty years." *Held*, that the quoted provision did not give the commissioner arbitrary power of removal, where a member reached the age of 60, but was still in full vigor and desired to remain in the service.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 185.*]

Appeal from Special Term, Kings County.

Mandamus by the People, on the relation of Ernest Lindemann, against Theodore A. Bingham, as Police Commissioner of the City of New York. From an order denying relator's motion for a peremptory writ commanding defendant to restore relator to his position of captain of police, relator appeals. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, JENKS, and MILLER, JJ.

W. M. K. Olcott (Terence J. McManus, on the brief), for appellant. James D. Bell, for respondent.

WOODWARD, J. We are of the opinion that the title of the relator to office is not the question at issue here, and that the return does not show a condition of facts which makes inappropriate a writ of mandamus. We pass, therefore, to the consideration of the question of whether the relator has been legally removed from the office of captain of police. It is not claimed that the relator was in any manner incapacitated for the duties of his office, or that he has been guilty of

---

any misconduct, but the power to arbitrarily remove him from office is claimed to be found under the provisions of section 355 of the Greater New York Charter (Laws 1901, p. 154, c. 466); it being conceded that the relator has reached the age of 60 years. If this is the proper construction to be placed upon section 355 of the Greater New York Charter, then the whole current of law in respect to officials of this character has been changed, and it becomes important to examine the question closely. The section, in so far as it is material to the question here presented, reads as follows:

"Any member of the police force being of the age of fifty-five years who has or shall have performed duty on such police force as aforesaid for a period of twenty years or upwards, upon his own application in writing, may, or upon a certificate of so many of the police surgeons as the police commissioner may require, showing a member of whatever age who has served twenty years is permanently disabled, physically or mentally so as to be unfit for duty, shall, by order of the police commissioner, be relieved and dismissed from said force and service and placed on the roll of the police pension fund, and awarded and granted, to be paid from said pension fund, an annual pension during his lifetime of a sum not less than one-half of the full salary or compensation of such member so retired; and any member of the police force who has, or shall have performed duty on any such force aforesaid, for a period of twenty-five years or upwards, being of the age of fifty-five years, or any member of any such police force who is an honorably discharged soldier or sailor from the army and navy of the United States in the late Civil War, who shall have reached the age of sixty years, or any such soldier or sailor who has performed duty on any such force for a period of twenty years, upon his own application in writing, provided there are no charges against him pending, must be relieved and dismissed from said force and service by the department and placed on the roll of the police pension fund and awarded and granted, to be paid from said pension fund, an annual pension during his lifetime of the sum not less than one-half of the full salary or compensation of such member so retired; *and the said commissioner may in like manner relieve and dismiss from the service and place on the roll of the police pension fund, and grant and award a pension to any member of said force other than an honorably discharged, soldier or sailor of the Mexican or late Civil War who shall have reached the age of sixty years.*"

The portion set forth in italics is the part of the statute under which the power of removal is claimed.

It would be strange if the Legislature, in providing a scheme for the rewarding of those who had faithfully served the municipality and the state, should include in the same section a provision for visiting a hardship upon a member who had retained his vigor and capacity, and who was at the time fully competent to earn his full compensation, and unless the language imperatively demands this construction it will not be given this effect in this court. The whole pension scheme is a beneficial scheme to the individual members of the force. It is extended to them as a favor under certain conditions set forth in the statute, and to say that the Legislature has intended to give an arbitrary power of removal to the commissioner, when a member of the police force has reached the age of 60 years, in full vigor and full of the desire for service, is to impute an absurdity to those whom the people have selected as their representatives, and is to impose a burden upon the pension fund which it was never intended to bear. There is no reason why a man who has been on the police force up to the age of 60 years, and who is then fully competent for the discharge of his

duties, should be placed upon the roll of the pension fund. The fact that he has been able to retain his position raises the presumption that he is a faithful official; and if his health is good, his strength unimpaired and his mind clear, what reason is there for making him in effect a public charge against his will, while a new man is placed in his position to earn the full salary? Clearly, if the Legislature had intended that men were to be retired after reaching 60 years of age, it would have made this intention clear in those parts of the statute specially dealing with removals from office, and not included it as a part of a benevolent scheme, designed to take care of those who had grown old in the service, or who had suffered the loss of mind or health in the policing of a great municipality. Indeed, if we read the whole of the pension scheme, as set forth in the statute, we shall be irresistibly led to the conclusion that the statute itself negatives the construction contended for by the defendant. For instance, section 354 provides that the—

"police commissioner shall have power, in his discretion, to retire and dismiss from membership in the said police force, and thereupon to grant pensions to, as hereinafter provided, any member of the police force of said city who shall have become disabled, physically or mentally, or superannuated by age so as to be unfit for police duty," etc.

And subdivision 4 of the same section provides for a pension to—

"any such member of the said police force who shall, after ten years and less than twenty-five years' membership in any such police force, become superannuated, by age, permanently insane or mentally incapacitated, or disabled physically or mentally, so as to be unfitted or unable to perform full police duty by reason of such disability or disease contracted without misconduct on his part, a sum not to exceed one-half nor less than one-fourth of his rate of compensation per annum."

And then the next section provides, as suggested in the subheading, "when members of force entitled to pension," etc. The whole theory of the pension provision is that it is to take care of those who have become incapacitated during their term of service, not that it is to afford an opportunity for arbitrarily dismissing men from the service who have earned the right to stay, and who are still competent for police service.

That this is the true construction is made even more evident by reading the provisions of section 300 of the charter, which provides, in reference to the police commissioner, that he—

"shall have power and is authorized to adopt rules and regulations for the examination, hearing, investigation and determination of charges made or preferred against any member or members of the said police force, but no member or members of the police force except as otherwise provided in this chapter shall be fined, reprimanded, removed, suspended or dismissed from the police force until written charges shall have been made or preferred against him or them," and that "any member of the police force who may hereafter become insane or of unsound mind, so as to be unable or unfit to perform full police service or duty, may be removed and dismissed from the police force by the commissioner."

But there is no mention of a power of removal for reaching the age of 60 years, and the only authority under section 355 is "in like manner" to "relieve and dismiss from the service" one who has reached the age of 60 years. Section 355 primarily relates to the rights possessed

by the members of the police force, while the preceding section relates to the powers of the police commissioner, and the clause which declares that the commissioner "may in like manner relieve and dismiss from the service and place on the roll of the police pension fund, and grant and award a pension to any member of said force * * * who shall have reached the age of sixty years" relates back to the power of the commissioner, who in his discretion may "retire and dismiss from membership in the police force, and thereupon grant pensions to, as hereinafter provided, any member of the police force of said city who shall become disabled," or becoming superannuated, which gives the commissioner jurisdiction to relieve and dismiss, and unless this fact is made to appear, by the written request of the member of the force, or by the certificate of the police surgeons, there is no power of removal vested in the commissioner, except in the cases provided for by section 300 of the charter, which was dealing with the power of removal for the welfare of the force, and which includes all cases which are not entitled to pensions. To force a pension upon a man who is concededly fully competent to discharge the duties of the office, and who is willing to continue in the service, merely that some other individual may be given an office, is contrary to the public policy of this state as outlined in its statutes and decisions of its courts, and, while the Legislature might provide differently, this result ought not to be reached by judicial construction.

The obvious intent of the Legislature was to permit members of the police force who had reached the age of 60 years to apply for relief from further service and to receive a pension whenever in the judgment of the police commissioner such relief was justified; that is, at 60 years of age, if the member of the police force deemed himself superannuated, he was to be permitted to ask for relief, and the commissioner was authorized, in his discretion, to grant it. But this is far from the granting of a power to the commissioner on his own motion to compel the retirement of a faithful and competent man who wanted to perform his duties. This would not be in a like manner, but in a very unlike manner from anything known to the police department under the statutes; for in no case is there an arbitrary power to dismiss from the force, or to grant a pension. Moreover, the commissioner is, by the terms of section 351 of the Greater New York charter, made the trustee of the police pension fund, and it is clearly the duty of a trustee to preserve the fund, and not to impose burdens upon it which are not necessary to the carrying out of the true intent and purposes of the Legislature in providing the fund; and to arbitrarily exercise a discretionary power for no other purpose than to increase the charges upon this fund, where the beneficiary was abundantly able to discharge all the duties of his office for years to come, would be an abuse of the discretion vested in such trustee, which ought not to be tolerated.

The order appealed from should be reversed, and the relator should be restored to his office.

Order reversed, with $10 costs and disbursements, and relator restored to his office. All concur, except JENKS, J., taking no part.